May it please the court. Peter Lively, Counsel for Appellants, President of the Courtroom. Your Honors, the debtors are here before the court seeking guidance for themselves. And debtors similarly situated in geographic areas of the country where home loans are valued. Home loans have higher values, and therefore the debts against them are higher, such that when liens are avoided through the bankruptcy process, if those debts secured by those liens are counted in the petition date eligibility, they become ineligible for the more efficient Chapter 13 process. Does the efficiency mean that it's less costly, the benefits of the Chapter 13 trustee administering and keeping the cost down, and the plan being confirmed without voting by creditors such that the debtors can actually retain their residences? You know, I'm sympathetic to your argument for indexing, which is essentially what you're saying. This is a high-cost market, and therefore there ought to be some allowance for that in order to accomplish the purpose of the statute. You could say the same thing about federal judges' salaries, but the fact of the matter is Congress hasn't done it for either. I appreciate that, Your Honor. Before I go any further, I would like to reserve five minutes for a rebuttal. I don't want to focus so much on whether there should be indexing. I think that there may be some equal protection implications to the way that the trustee is interpreting the language of the debt limits. Equal protection in the constitutional sense? Yes, Your Honor, and that's addressed in the briefs, and I'd rather not get into that on oral argument. But, counsel, isn't this case controlled by the Scobus case? Doesn't that settle the issue for the Ninth Circuit? Yes, Your Honor, and that's what I'd like to focus on. The Scobus case determined that... But the Scobus case cuts the other way, cuts against your client, does it not? No, Your Honor, I don't believe so. All right, let's hear it. The Scobus case has to do with a judgment lien. And in this case, the problem that the debtors are disputing counting a consensual trustee of California law that the debtor gives at the time the debtor gets a home loan, and it is not taken off the property until the debtor is exonerated. When the debtor enters the bankruptcy case, all of the debtor's property becomes part of the bankruptcy estate. In the Scobus case, this honorable court held that the bankruptcy court had a reasonable degree of certainty from looking at the debtor's schedules on the petition date and seeing the homestead exemption and the judgment lien, and could readily ascertain with certainty that that judgment lien was going to be unsecured. And the court found that that was consistent with the Supreme Court opinion in Owen v. Owen, where the homestead-exempt property was withdrawn from the estate for the benefit of the debtor and away from the creditor. So the creditor couldn't have a security interest in that homestead-exempt property absent a successful objection to the homestead. When we're dealing with a consensual lien against the debtor's residence, we're dealing with the plan confirmation process. We're dealing with the determination of the secured status of the claim under 506, which is premised upon it being in light of the purpose of evaluation and based upon the intended disposition or use of the property and in light of a hearing on plan confirmation. Section 506 has to be read in conjunction with Section 1327, which is the effect of confirmation. Typically under 1327, property vests at confirmation in the debtor. The property that became property of the estate revests in the debtor at plan confirmation. Similarly to in the matter of Scobus, where the homestead exemption left the estate early in the bankruptcy process and therefore it would be readily ascertainable for the bankruptcy judge at the petition date to say that that debt secured formally at the petition date by a consensual lien couldn't be secured in the entire case because the property had left the estate. That's typical. And that may be what happened in the other circuits that have found using 506 determination of secured status should be used for Chapter 13 eligibility, but that's not what happens in the Central District of California. Section 1327 language provides that unless the plan provides otherwise, the property vests and revests in the debtor at plan confirmation, free and clear of liens of the creditors. But that's not what happens in the Central District of California. Debtors in the Central District of California have to use a form plan as management. The form plan provides that revesting of the estate property does not happen until all of the plan payments have been made and the debtor receives a discharge. So there is a contingency of the debtors having to make years' worth of plan payments before the debt is discharged and the lien is avoided. And the bankruptcy court, therefore, cannot be certain with any degree of certainty on a petition date whether the debt's going to be secured or not. So you're saying that because 1327 has a delayed effect in this particular judicial district, it ought to be applied differently in cases coming out of there. Is that it? Well, yes, Your Honor, because the creditor is left with main rights throughout the case. When the debtor brings a motion for determination of secured status for the treatment of debt in a plan, the order that's produced by the court provides that the creditor has its 363K rights of bidding, credit bidding at a sale or a refinance. It has its rights for a lien upon conversion of the case. It has relief from stay with its lien if a senior lien holder gets relief. All these indices of secured status and the fact that the lien survives against the property until the property revests in the debtor at the very end of the plan payments and discharge means that at the petition date, it's not the bankruptcy judge is not capable of determining with any degree of certainty that it's an unsecured debt for eligibility purposes. And eligibility is to be determined on the petition date. And you count non-contingent unsecured claims. And you're saying you can't get a Chapter 13 done in the Central District of California without this delayed phase-in of 1327. Is that right? That is what the Chapter 13 plan provides. But you don't have to do it that way, right? Excuse me? You don't have to do it that way. Yes, you do. The debtor is required to use the foreign plan. All right. And then let me ask you, does that practice, is there anything in the record showing that practice contrasts with any other district or what the national practice is for the implementation of 1327? Your Honor, I'm not aware of anything in the record that indicates that. And all of the cases cited by Scobus did not indicate. But the way that 1327 is phrased leads me to believe that it is typical that most of the time property vests in the debtor, revests in the debtor at confirmation. And that makes the holding in Scobus, that would make the cases finding the use of 506 to determine the secured status of a debt for eligibility purposes consistent. But that's not what happens in the Central District of California. But there is a contingency. And under 109E, the plain language of the statute says that we only count non-contingent, liquidated, unsecured claims. Counsel, are you saying that section 506A1 doesn't apply in this context? I'm not following your argument. I'm sorry. Okay. 506A is a determination of the secured status of a claim for the purpose of the plan. The second sentence of 506A provides... And you say it's limited to the plan only. Is that your argument? In other words, it is not to be applied in the case of qualification for Chapter 13? There is the larger case, and then there is the plan. And 506A's expressed language says that the valuation is in light of the purpose of the valuation and the disposition or use of the property in conjunction with adhering on the plan. Right. And so my understanding of your 109E argument that you were, I think, just getting to, is that this type of debt should not be considered to be non-contingent because it's contingent until the plan is confirmed. That's correct. And with that uncertainty of whether debtors will make all the payments, the bankruptcy judge cannot have any degree of certainty on a petition date. And therefore SCOBUS, the holding in SCOBUS where there was certainty because the property left the estate close to the petition date through the exemption and no objection to the homestead exemption, and the fact that the 522 motions, which is avoidance of a lien, are permanent. The 522 motion in the Central District does not provide lien rights to a creditor. But, Counselor, my problem with your argument is that you seem to read the word non-contingent out of the statute, out of 109E, because as I'm understanding it, under your reading of that statute, every debt would be contingent until plan confirmation. I don't agree, Your Honor. It's only the debt that's determined under 506. The debtor needs to bring a motion. The debtor brings a motion regarding a consensual lien, which is the junior home loan, and the border provides for those lien rights and the contingency, which is consistent with the plan, that the debtor must make all of the plan payments. Well, this sequence that you're describing now would apply equally to a home loan, a voluntary debt, or an involuntary debt, wouldn't it? No, Your Honor, because the order that is entered on a judgment lien is under a different chapter. The avoidance of a judgment lien is under 522F, and the order that's entered does not provide the judgment lien holder with any lien rights during the case. And it's also valid on conversion. I understand your distinction, thank you. So it would apply to, in this case, the second and the third. Because you view them as being, although they were secured by a deed of trust, you're viewing them as contingent because until you know the plan is going to be fully satisfied and until you get to discharge, it's all contingent. That's correct, Your Honor. Under your reading of the statute. Can I just pin you down a little, again, on this mandatory nature of the postponement? You say the form requires it. What happens if you propose a plan that revests the property immediately on confirmation? That can't be approved in the Central District of California? Not with the mandatory form plan. But what if you don't use the mandatory form? What if you use a different form? Well, the form is mandatory, Your Honor, so the debtor would not be able to get anywhere with that. I guess I asked for that. All right. I'm running out of time for rebuttal. Thank you, Counsel. Thank you very much, Your Honors. Thank you. May it please the Court. My name is Angela Gill. I represent the Chapter 13 trustee, Kathy Dockery, of the matter. Your Honors, I would first like to begin on what Mr. Lively, on behalf of the debtors and the trustee, do agree on, and that is the debtors scheduled on their debt, on their Schedule D, the debts in question, which is a senior deed of trust secured by their principal residence, to a second deed of trust, which is a consensual mortgage, or a third deed of trust, which is also consensual, and then a fourth involuntary judgment lien. What we all agree on is the value of the property, which was listed as $549,000. Based on that valuation, there is no question, there is no question in the bankruptcy court's mind, in the debtor's mind, or the trustee's mind, that the second, third, and fourth position liens were entirely unsecured. Had there been some additional value, this might have been a harder case, but the reality is, and everyone recognized, each of the liens in junior position were entirely unsecured. In fact, the debtors' own schedules reflect that. They intended to provide for each of the junior liens as unsecured claimants to pay, if this plan was confirmed, they would have been paid pro rata with every other general unsecured claim in the amount of 3.5%. The bankruptcy code, the statute, includes debt limitations, which defines who may be eligible to proceed in a Chapter 13 case. The debt limitation at the time that this case was filed was $360,475 of unsecured debt, non-contingent liquidated unsecured debt. The bankruptcy code does not define the term unsecured or secured. It's a term of art. We use 506A to determine the extent of security in a claim. The debtor's argument that we shouldn't treat it as non-contingent, that it's contingent until the plan is confirmed, or performed, forgive me. Your Honor, the debtor does take inconsistent positions. On the one hand, they first argue that the debts should be counted as non-contingent, liquidated, secured debt. On the other hand, they say the consensual lien holders, meaning the second and the third deed of trust, should be counted as contingent because of this requirement that the debtor has to complete the plan in order to have the liens removed. Right. That argument I will submit is not consistent with the Scovis opinion, for one. And two, it's also not really consistent with the idea and the concept in bankruptcy that liens, the general rule is liens survive bankruptcy. Even a judgment lien, which is avoided under 522F, is not permanent in the sense that counsel is proposing. If a debtor does not complete a plan, even a judgment lien under 522F is reinstated if the case is dismissed. Now, I will grant that if a case is converted to Chapter 7, a judgment lien would still be deemed void in a Chapter 7 case because we know from the U.S. Supreme Court that judgment liens can be avoided in a Chapter 7, whereas consensual liens secured by a principal residence cannot. But in this case, in the Chapter 13 case, a judgment lien and a consensual lien that is avoided or transferred would be reinstated if the case is not completed. So there's really the distinction that counsel is trying to make. It's really, I would submit, a distinction without a difference. It's not really a contingent debt. A contingent debt is one upon which the, is one where liability is not yet, has not yet been decided. In other words, there has to be some condition that has yet to occur to invoke the liability of the borrower or the debtor. In this case, the debts, the debtors acknowledge and elicit their debts, and there's no question that they're reliable for these debts on the date the petition was filed. I guess his point is contingent security is another aspect of a contingent debt. The security rises or falls depending on what happens. It's just as contingent as if the debt itself rises or falls. Well, Your Honor, and I would refer back to Judge Kristen's point earlier in that, under that theory, then every debt would essentially be contingent in a bankruptcy case. And the reality of bankruptcy, especially in a Chapter 13 reorganization chapter, it does last for a few years. And, of course, things can change during those few years. But as of the petition filing date, we need to recognize and determine what is a liability. And we all recognize that the debtor's liability on these debts was certain. And on that point, I should also mention, Your Honors, that in SCOVIS, we were dealing with a judgment lien. In this case, we're dealing with a judgment lien and two consensual liens. However, the Court did say in SCOVIS, they simply said they put forth a straightforward rule that says a debtor schedules control. There is no question. Well, as long as they're filed in good faith. As long as they're filed in good faith, which everyone concedes here. There is no dispute over the valuation or the debts. So in this case, it's readily ascertainable, even more ascertainable than the case was in SCOVIS, because the property is so far underwater. There is no question in anyone's mind that all of these junior liens were entirely unsecured. And they should be counted. Counsel, I'm confused by your opposing counsel's reference to a local practice in the Central District. Would you comment on that? This is a new one on me. Sure, Your Honor. I'm a little bit confused myself, but I will say this. The mandatory plan form in the Central District of California does, in fact, say that the property does not revest in the debtor upon confirmation, but at the end of the case. However, I don't believe that that provision in our mandatory plan form, first of all, I do think a debtor could strike it and present it to the bankruptcy court and say, we want to make a change in the mandatory plan form. Aha, so you're saying the mandatory form is not mandatory. The mandatory form is mandatory, Your Honor. But that's not to say that you cannot make a change. There is, in fact, a provision to include miscellaneous provisions in the plan, which is routinely used by debtors to create or include additional provisions, which a bankruptcy court and a trustee would have an opportunity to review and comment on. So it's mandatory. In other words, you could move to amend or something like that. That's correct, Your Honor. I would submit you could make a change to the form and present it to the court for approval. Have you ever seen that done? Yes, Your Honor. Not with respect. I have not. In my years as a trustee, I have not seen anyone strike that specific provision of the plan. But we have seen other provisions included or removed when appropriate, and the trustee and the court can review that. So is it right that Judge Kogan was asking that this is viewed as a template, a form the plan has to be submitted on, but your position is you think that could be modified? It is a mandatory form, Your Honor, which the bankruptcy court uses, and it's used in the entire district, as far as I'm aware, within the different divisions. Having said that, there are changes that can be made. But even if there wasn't, Your Honor, the fact that the property does not revest in the debtor right away, I don't think that impacts the nature of the lien in the way that counsel is proposing. The liens, as I argued before, whether it's a judgment lien or a consensual lien, would still be reinstated if the plan is not completed. Right. Your Honor, I do want to briefly address also the issue of my clock is counting down here, so I'm just keeping an eye on it. Counsel did mention briefly the constitutional issue that was brought up in the briefs, and I'm not going to go into great detail because counsel did not, but the trustee does believe there is no equal protection violation in this case. I believe there's consensus that this law would be subjected to a rational basis standard of review. There's no constitutional right that's impacted here. There's no distinction made across any suspect lines, and there is a rational basis and a reason for Congress to implement these debt limitations. It's a statutory amount that Congress decided to implement, and essentially I would submit Congress drew a line in the sand. If you have more than $360,475 of unsecured debt, you do not qualify for Chapter 13 relief. They were awfully close to the line here, weren't they? There's some irony in the fact that we've been through three levels of appeals with the attorney's fees and but for $20,000. This case would come out differently. It brings to mind Richard III's comment of my kingdom for a horse. Your Honor, that's true. They are close to the line, and I would submit that if they were not close to the line, we probably would not be here. But the reality is whenever Congress decides to draw a line in the sand, people or parties who are close to the line will complain as to where that line was drawn. But there is a reason for that, and that is that Congress decided that cases with more money at stake, with more debts at stake, should have the greater protections of Chapter 11. And that's why in this particular case, while of course it would be a little bit more cumbersome for the Santos' debtors to convert to a Chapter 11, it's not an absurd result. It's certainly not an unconstitutional result. And, Your Honor, I would also like to point out that the bankruptcy appellate panel has also considered the Scovis opinion. This case did come up, the very same exact circumstances in the Smith v. Rojas matter, and the bankruptcy appellate panel also held that Scovis does apply in this case. The debts are readily ascertainable, the amounts of the debts. 506A does apply in the context of determining eligibility under 109E. It was appropriately applied. And debtors who find themselves in this position where they are close to the line, where they're in fact proposing a plan, counsel mentioned that the 506A analysis, you have to consider the intent and purpose of that analysis. Well, the intent and purpose here was to confirm a plan which treated these claims as general unsecured claims. The debtors scheduled them as such. Even though they're listed on Schedule D, which is the schedule for secured debt, if you notice on the schedule, it's bifurcated. The senior deed of trust is not bifurcated, presumably because that claim cannot be modified under Section 1322B. But all three of the junior liens are in fact bifurcated into secured and unsecured amounts, which are entirely unsecured. The debtors propose a plan to treat them as entirely unsecured claims. They ask the bankruptcy court to value these claims, and they got orders valuing them as such. They even list on their schedules subject to 11506A. So they are in fact inviting the court to use a 506 analysis to determine the nature of these debts, which was done. And I would submit that the district court, the bankruptcy court, made the correct decision in finding, and by applying SCOVIS, that these debtors are simply not eligible to proceed in Chapter 13. And unless the court has any further questions. Judge? No questions. None here either. Thank you. Thank you. Counsel, would you like to respond? Yes, Your Honor. The debtors asserted in their briefs that as of the petition date, the consensual junior home loans are secured debts. They're not contingent, they are liquidated, and they are secured. And they should be counted in that part of the debt limits. When the debtors brought their 506 motion before the court asking for the determination of the secured nature of the debt for planned purposes, the order produced by the court provided that the creditor retain its lien rights, and that together with the plan that's mandatory and provides for vesting at the end of the plan payments, there is a contingency as to the unsecured nature of the debt. Therefore, it shouldn't be counted as an unsecured debt. And the bankruptcy court erred in counting it as such and dismissing the debtors from Chapter 13 eligibility. These are middle-class debtors. They belong in a chapter that allows them to cost-efficiently confirm their plan. And without having the votes of creditors where the home loan creditors would control the voting class and would trump the ability of the debtors to retain their residence. Chapter 13 is set up for middle-class debtors to be able to retain their residence. There's no voting in Chapter 13. The debtors submit their plan. It's reviewed by the trustee and the court and provided that it's feasible and follows the code. It's confirmed. The debtors ask that the court recognize that the plain language of 109E does not allow for the counting of their junior home loans as unsecured as of the petition. And that classification is entirely different than the treatment of a debt in a plan that's determined under 506. Thank you, counsel. Thank you. Thank you.
judges: Cogan, O'scannlain, Christen